KAMPFE et al. v. REICHARD et al.

(Circuit Court, S. D. New York. January 2, 1901.)

PATENTS—INFRINGEMENTS—SAFETY RAZORS.

The Kampfe patent, No.·387,359, for improvements· in safety razors, claims 1 and 2, which cover a razor in which the blade is adjusted by screws in relation to the guard, are valid and entitled to a liberal construction as to equivalents; the invention being one of more than ordinary value, and a distinct advance in the art. As so construed, *held* infringed.

In Equity. Suit for infringement of patents. On final hearing.

Edwin H. Brown, for complainants.

W. C. Hauff, for defendants.

COXE, District Judge. This is an equity suit based upon three letters patent owned by the complainants. One of these, No. 27,032, is for a design and was considered in the previous case. The patent was there held to be invalid. Another, No. 561,707, was also considered in the previous case and it was there decided that the defendant did not infringe. The same question of infringement is presented in the present case. Letters patent, No. 387,359, alone remain to be considered. They were granted to the complainants August 7, 1888, for improvements in safety razors. Claims 1 and 2 are the only ones involved. They are as follows:

"(1) A safety razor having angular blade retaining clips on the top of the ·holder· at the ends of said top, and screws in said clips, substantially as herein shown and described, and for the purpose of adjusting the blade in relation to the guard,·as set forth. (2) In a safety razor, the combination, with a blade holder, of movable angle clips, on said holder at the ends of the top of the holder, screws in said clips, and a spring pressing on the blade towards the guard, substantially as herein shown and described, and for the purpose of adjusting the blade in relation to the guard, as set forth."

The object of the invention was to provide a razor in which the blade can be adjusted readily in relation to the guard. The cutting blade is placed upon the top of the holder, the ends being passed in between the holder. and the clips. A spring is then raised which presses the blade· forward against the lower ends of the screws which are shown as located in the clips. By turning the screws so that their ends move downward and press upon the beveled top of the blade the tendency is to force the blade against the spring and away from the guard. If the screws be turned in an. opposite direction the pressure of the spring forces the blade toward the front of the guard. A perfect adjustment can thus be made, so that the cutting edge will be on the proper gauge line with reference to the guard. Another form of applying the invention is shown in Fig. 5 of the patent, where the clips are secured to spring angle pieces and are provided with top and bottom flanges, the screws being held in the·bottom flanges. Still

another form is shown in Fig. 6, where screws are provided both in the top and bottom flanges of the clips. The adjustment can be made by any person of ordinary intelligence. In the prior structures where the clips were made without screws the setting of the blade was a difficult operation requiring time and skill. Pliers were used to bend the metal into the proper shape which resulted in impairing and often in breaking the clips. If a thicker or a thinner blade were substituted for the one removed it was necessary to repeat the same difficult process of adjustment which could seldom be accomplished by the user of the razor and necessitated the employment of skilled labor. The essential element of the invention is the adoption of adjusting screws to place and hold the blade in proper position. Evidently the inventors did not regard the form, size or location of the screws, or the angle at which they were set, as essential features of their combination. There was nothing in the prior art requiring them to limit the invention to such unsubstantial and inconsequential details. The use of adjusting screws in this art for the purposes indicated was new with the complainants and it was an improvement of more than ordinary value. It saved time, money and labor. It has increased sales and largely augmented the popularity of safety razors. The owner can now adjust the blade without returning it to the manufacturer or vendor; no expert skill is necessary. The razor does not break down or get out of order. Before the invention large numbers of razors were returned by those whose patience was exhausted by their propensity to become unmanageable; now such an event is rare. Lack of invention is hardly asserted. Indeed, the defendants have a patent granted to Reichard for a razor operating upon the same principle. The main defense is noninfringement, and this is based upon the fact that in the defendants' structure the screws are not actually in the clips as shown in the drawings of the patent. There is no doubt that the defendants have appropriated all that is valuable in the complainants' device. They have taken the essence of the invention and have changed it in form only. The conduct of the defendant Reichard has been such that the court is not inclined to strain the rules of construction in order to relieve him. For eight years he was in the employ of the complainants. Since leaving them he has been engaged in making safety razors on his own account. His competition has not been fair. He has copied complainants' methods at every point. It is plain that he has attempted to avoid the patent by locating the screws at a different point from any shown in the drawings. The construction is an awkward one, no one would locate the screws at the corners of the holder from choice, and the inference is plain that the object was to secure all the advantages of the invention and escape infringement by the plea that the screws are not in the clips. The effort shows some ingenuity, but the difference is not in function or in result but in nomenclature merely. The object in view was to secure an end adjustment by forcing the clips—as shown in Fig. 5—down upon the blade. To do this the complainants place the screw-threaded hole in the bottom flange of the clip with the end of the screw bearing against the holder. The defendants place the screw-threaded hole in the holder with the end of the screw bearing against the elongated bottom

flange of the clip. So far as the action of the screws is concerned the one is the exact equivalent of the other. Suppose the defendants had placed the screw in the spring between the clip and the casing of Fig. 5, or had extended the spring a short distance beyond the clip and placed the screw there, or had placed the threaded hole in the extended spring piece of their own razor and had thus pulled down the clip upon the blade, could they have avoided the claims? It is thought not, though in none of these supposed constructions would the screws pass through the clips. The defendants argue that they should escape because the threaded holes through which the screws pass are not in the clips of their razor. But the claims do not say that the screws must pass through holes in the clips. The screws are to be in the clips; that is, within and not outside of the clips; within the limits of, but not necessarily extending through, the clips. Even if a construction were necessary limiting the claims to "screws in said clips" the words quoted are susceptible of an interpretation which will include so palpable a subterfuge as that attempted by the defendants. Surely, the court is not called upon to adopt an illiberal construction at the instance of so unscrupulous an infringer as the principal defendant. The complainants are entitled to a decree upon claims 1 and 2 of letters patent No. 387,359, but without costs.